IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GOLD'S GYM LICENSING LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A,"<br><br>    Defendants. | Case No. 20-cv-00524 |

## COMPLAINT

Plaintiff Gold's Gym Licensing LLC ("Gold's Gym" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.  This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Gold's Gym's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Gold's Gym substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Gold's Gym to combat e-commerce store operators who trade upon Gold's Gym's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including fitness apparel, work out accessories, and other merchandise, using infringing and counterfeit versions of Gold's Gym's federally registered trademarks (collectively, the "Counterfeit Gold's Gym Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Gold's Gym Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Gold's Gym is forced to file this action to combat Defendants' counterfeiting of its registered Gold's Gym trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Gold's Gym Products over the Internet. Gold's Gym has been and continues to be irreparably damaged through consumer

confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff is a limited liability company organized and existing under the laws of Delaware with its principal place of business in Dallas, Texas.

5. Plaintiff's Gold's Gym brand is a well-known fitness brand originally founded by Joe Gold in 1965. Gold's Gym currently has more than 700 fitness locations and serves more than 3 million people across six continents. Gold's Gym has grown to become the largest full-service gym in the world.

6. Products sold under the Gold's Gym brand include men's and women's fitness apparel and products designed for working out. Gold's Gym also sells Gold's Gym branded workout accessories, bags, and backpacks.

7. Gold's Gym has earned various accolades for its business. In 2015 and 2016, Gold's Gym topped the J.D. Power Health and Fitness Center Satisfaction Report.

8. Gold's Gym products are distributed and sold to consumers throughout the United States, including in Illinois, through Gold's Gym locations and through the official goldsgear.com website.

9. Gold's Gym incorporates a variety of distinctive marks in the design of its various Gold's Gym products. As a result of its long-standing use, Gold's Gym owns common law trademark rights in its trademarks. Gold's Gym has also registered its trademarks with the United States Patent and Trademark Office. Gold's Gym products typically include at least one of Gold's Gym's registered trademarks. Often several Gold's Gym marks are displayed on a

single Gold's Gym product. Gold's Gym uses its trademarks in connection with the marketing of its Gold's Gym products, including the following marks which are collectively referred to as the "GOLD'S GYM Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 1,402,824 | GOLD'S | For: Athletic clothing, namely, shirts, shorts, tank tops, warm up suits, including pants and jackets, and posing trunks in class 025. |
| 1,214,046 | GOLD'S GYM | For: Athletic clothing-namely, shirts, shorts, tank tops, warm up suits, including pants and jackets, and posing trunks in class 025. |
| 2,053,953 | GOLD'S GYM | For: Weight lifting belts, weight lifting gloves, weight belt straps and wrist straps in class 028. |
| 2,068,400 | GOLD'S GYM | For: All purpose sport bags, tote bags and knapsacks in class 018.<br><br>For: Sweat bands and hats in class 025. |
| 5,017,462 | GOLD'S GYM | For: Electric food blender in class 007. |
| 5,140,099 | GOLD'S GYM | For: Containers, namely, bottles with internal agitators for mixing ingredients and shaker cups, sold empty; containers, namely, bottles with non-electric internal agitators for mixing ingredients, for beverages, liquid foods, and/or powdered foods, sold empty; non-electric food and beverage blenders and blender agitators; containers, namely, plastic or aluminum containers for use with beverages, liquid foods, dry and/or powdered foods, sold empty; insulated beverage containers, sold empty; drinking bottles for sports, sold empty; beverage sports bottles, sold empty; water bottles, sold empty; plastic water bottles, sold empty; aluminum water bottles, sold empty; cups; plastic water bottle holders and attached carabiner clip sold as a unit in class 021. |

| | | |
|---|---|---|
| 5,549,133 | GOLD'S GYM | For: Footwear in class 025. |
| 4,645,424 | GOLD'S GYM EXPRESS | For: Clothing, namely, shirts, tank tops in class 025. |
| 5,142,058 | GOLD'SFIT | For: Clothing, namely, shirts and hats in class 025. |
| 2,062,562 | (figure) | For: Cloth and synthetic goods, namely, all purpose sport bags, tote bags and knapsacks in class 018. |
| 3,249,465 | (figure) | For: Clothing, namely shirts, tank tops, shorts, trunks, warm-up suits, pants, jackets, shoes, sweat bands and hats in class 025. |
| 3,296,366 | (figure) | For: Clothing, namely shirts, tank tops, shorts, trunks, warm-up suits, pants, jackets, shoes, sweat bands and hats in class 025.<br><br>For: Gymnasium, exercise and fitness equipment, namely, weightlifting machines, exercise machines, exercise weights, weightlifting benches, exercise benches, exercise balls, balance boards, exercise treadmills, stationary bicycles, elliptical exercise machines, dumbbells, barbells in class 028.<br><br>For: Gymnasium services; fitness services, namely physical fitness consultation and instruction in class 041. |
| 5,017,465 | (figure) | For: Electric food blender in class 007. |

5

| | | |
|---|---|---|
| 5,140,101 | | For: Containers, namely, bottles with internal agitators for mixing ingredients and shaker cups, sold empty; containers, namely, bottles with non-electric internal agitators for mixing ingredients, for beverages, liquid foods, and/or powdered foods, sold empty; non-electric food and beverage blenders and blender agitators; containers, namely, plastic or aluminum containers for use with beverages, liquid foods, dry and/or powdered foods, sold empty; insulated beverage containers, sold empty; drinking bottles for sports, sold empty; beverage sports bottles, sold empty; water bottles, sold empty; plastic water bottles, sold empty; aluminum water bottles, sold empty; cups; plastic water bottle holders and attached carabiner clip sold as a unit in class 021. |
| 2,002,430 | | For: Athletic clothing, namely shirts, shorts, tank tops, warm up suits, pants, jackets, posing trunks, sweatshirts, and hats in class 025. |
| 4,645,427 | | For: Clothing, namely, shirts, tank tops in class 025. |
| 1,968,266 | | For: Athletic clothing, namely shirts, shorts, tank tops, warm-up suits, including pants, jackets and posing trunks in class 025. |
| 4,912,864 | | For: Athletic clothing, namely, shirts, shorts, tank tops, warm up suits, including pants and jackets, sweatshirts, hoodies, t-shirts, long sleeved shirts, jerseys, polo shirts and posing trunks; sweat bands and hats in class 025. |

| | | |
|---|---|---|
| 5,017,464 | | For: Electric food blender in class 007. |
| 5,227,382 | | For: Footwear in class 025. |
| 5,140,100 | | For: Containers, namely, bottles with internal agitators for mixing ingredients and shaker cups, sold empty; containers, namely, bottles with non-electric internal agitators for mixing ingredients, for beverages, liquid foods, and/or powdered foods, sold empty; non-electric food and beverage blenders and blender agitators; containers, namely, plastic or aluminum containers for use with beverages, liquid foods, dry and/or powdered foods, sold empty; insulated beverage containers, sold empty; drinking bottles for sports, sold empty; beverage sports bottles, sold empty; water bottles, sold empty; plastic water bottles, sold empty; aluminum water bottles, sold empty; cups; plastic water bottle holders and attached carabiner clip sold as a unit in class 21. |

10. The above U.S. registrations for the GOLD'S GYM Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The GOLD'S GYM Trademarks have been used exclusively and continuously by Gold's Gym, some since at least as early as 1974, and have never been abandoned. The registrations for the GOLD'S GYM Trademarks constitute *prima facie* evidence of their validity and of Gold's Gym's exclusive right to use the GOLD'S GYM Trademarks pursuant to 15 U.S.C. § 1057(b).

7

Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the GOLD'S GYM Trademarks included in the above table.

11. The GOLD'S GYM Trademarks are exclusive to Gold's Gym, and are displayed extensively on Gold's Gym products and in Gold's Gym's marketing and promotional materials. The Gold's Gym brand has been extensively promoted and advertised at great expense. In fact, Gold's Gym has expended millions of dollars annually in advertising, promoting and marketing featuring the GOLD'S GYM Trademarks. Gold's Gym products have also been the subject of unsolicited publicity resulting from their high quality and innovative design.

12. The GOLD'S GYM Trademarks are distinctive when applied to the Gold's Gym products, signifying to the purchaser that the products come from Gold's Gym and are manufactured to Gold's Gym's quality standards. The GOLD'S GYM Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the GOLD'S GYM Trademarks is of incalculable and inestimable value to Gold's Gym.

13. For many years, Gold's Gym has operated an e-commerce website where it promotes and sells genuine Gold's Gym products at goldsgear.com. Sales of Gold's Gym products via the goldsgear.com website represent a significant portion of Gold's Gym's business. The goldsgear.com website features proprietary content, images and designs exclusive to Gold's Gym.

14. Gold's Gym's innovative marketing and product designs have enabled Gold's Gym to achieve widespread recognition and fame and have made the GOLD'S GYM Trademarks some of the most well-known marks in the fitness industry. The widespread fame,

outstanding reputation, and significant goodwill associated with the Gold's Gym brand have made the GOLD'S GYM Trademarks valuable assets of Gold's Gym.

15. Gold's Gym has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the GOLD'S GYM Trademarks. As a result, products bearing the GOLD'S GYM Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Gold's Gym. Gold's Gym is a multi-million-dollar operation, and Gold's Gym products have become among the most popular of their kind in the world.

**The Defendants**

16. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Gold's Gym. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Gold's Gym to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Gold's Gym will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Gold's Gym brand has resulted in its significant counterfeiting. Consequently, Gold's Gym has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Gold's Gym has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Gold's Gym Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, Nw. J. Int'l L. & Bus. (forthcoming 2020), at 24. Further, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 25.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Gold's Gym Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Western Union, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Gold's Gym has not licensed or authorized Defendants to use any of the GOLD'S GYM Trademarks, and none of the Defendants are authorized retailers of genuine Gold's Gym products.

22. Many Defendants also deceive unknowing consumers by using the GOLD'S GYM Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Gold's Gym products. Other e-commerce stores operating under Seller Aliases omit using the GOLD'S GYM Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for genuine Gold's Gym products.

23. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to

Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent one from learning their true identities and the scope of their e-commerce operation.

24. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Gold's Gym Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate SEO, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Gold's Gym Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Gold's Gym Products were manufactured by and come from a common source and that Defendants are interrelated.

26. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Counterfeiters such as Defendants typically operate multiple Seller Aliases and payment accounts so that they can continue operation in spite of Gold's Gym's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Gold's Gym. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

28. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Gold's Gym Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Gold's Gym, have jointly and severally, knowingly and willfully used and continue to use the GOLD'S GYM Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Gold's Gym Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the GOLD'S GYM Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Gold's Gym Products, including the sale of Counterfeit Gold's Gym Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Gold's Gym.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. Gold's Gym hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered GOLD'S GYM Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The GOLD'S GYM Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Gold's Gym products sold or marketed under the GOLD'S GYM Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the GOLD'S GYM Trademarks without Gold's Gym's permission.

33. Gold's Gym is the exclusive owner of the GOLD'S GYM Trademarks. Gold's Gym's United States Registrations for the GOLD'S GYM Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Gold's Gym's rights in the GOLD'S GYM Trademarks, and are willfully infringing and intentionally using counterfeits of the GOLD'S GYM Trademarks. Defendants' willful, intentional and unauthorized use of the GOLD'S GYM Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Gold's Gym Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Gold's Gym has no adequate remedy at law, and if Defendants' actions are not enjoined, Gold's Gym will continue to suffer irreparable harm to its reputation and the goodwill of its well-known GOLD'S GYM Trademarks.

36. The injuries and damages sustained by Gold's Gym have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Gold's Gym Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37. Gold's Gym hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Gold's Gym Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Gold's Gym or the origin, sponsorship, or approval of Defendants' Counterfeit Gold's Gym Products by Gold's Gym.

39. By using the GOLD'S GYM Trademarks in connection with the sale of Counterfeit Gold's Gym Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Gold's Gym Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Gold's Gym Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Gold's Gym has no adequate remedy at law and, if Defendants' actions are not enjoined, Gold's Gym will continue to suffer irreparable harm to its reputation and the goodwill of its Gold's Gym brand.

**PRAYER FOR RELIEF**

WHEREFORE, Gold's Gym prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the GOLD'S GYM Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Gold's Gym product or is not authorized by Gold's Gym to be sold in connection with the GOLD'S GYM Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Gold's Gym product or any other product produced by Gold's Gym, that is not Gold's Gym's or not produced under the authorization, control, or supervision of Gold's Gym and approved by Gold's Gym for sale under the GOLD'S GYM Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Gold's Gym Products are those sold under the authorization, control or supervision of Gold's Gym, or are sponsored by, approved by, or otherwise connected with Gold's Gym;

    d. further infringing the GOLD'S GYM Trademarks and damaging Gold's Gym's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner,

        products or inventory not manufactured by or for Gold's Gym, nor authorized by Gold's Gym to be sold or offered for sale, and which bear any of Gold's Gym's trademarks, including the GOLD'S GYM Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Gold's Gym's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate, (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the GOLD'S GYM Trademarks;

3) That Defendants account for and pay to Gold's Gym all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the GOLD'S GYM Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Gold's Gym be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the GOLD'S GYM Trademarks;

5) That Gold's Gym be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 23rd day of January 2020.     Respectfully submitted,

                                            /s/ Justin R. Gaudio
                                            Amy C. Ziegler
                                            Justin R. Gaudio
                                            Allyson Martin
                                            Greer, Burns & Crain, Ltd.
                                            300 South Wacker Drive, Suite 2500
                                            Chicago, Illinois 60606
                                            312.360.0080
                                            312.360.9315 (facsimile)
                                            aziegler@gbc.law
                                            jgaudio@gbc.law
                                            amartin@gbc.law

                                            *Counsel for Plaintiff Gold's Gym Licensing LLC*